**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| P.M., | : | |
| Plaintiff, | : | |
| v. | : | Case No. 1:25-cv-103-ALS |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

# ORDER

Plaintiff filed this Social Security appeal on July 3, 2025, challenging the Commissioner's final decision denying her disability application, finding her not disabled within the meaning of the Social Security Act and Regulations. (Doc. 1). Jurisdiction arises under 42 U.S.C. §§ 405(g) and 1383(c). All administrative remedies have been exhausted.

***Legal Standard***

In reviewing the final decision of the Commissioner, the Court must evaluate whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards to the evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, which is defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Brito v. Comm'r, Soc. Sec. Admin.*, 687 F. App'x 801, 803 (11th Cir. 2017) (first citing *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002); and then quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991) (citations omitted).

"Even if we find that the evidence preponderates against the [Commissioner's]

decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). "In contrast, the [Commissioner's] conclusions of law are not presumed valid. The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-46 (citations omitted).

Under the Regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant suffers from a severe impairment which significantly limits his or her ability to carry out basic work activities. Third, the Commissioner evaluates whether the claimant's impairments meet or equal listed impairments in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC") will allow a return to past relevant work. Finally, the Commissioner determines whether the claimant's RFC, age, education, and work experience allow for an adjustment to other work.

The claimant "bears the burden at the first four steps," but there is a limited burden shifting at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020). At step five, the burden shifts to the Commissioner to "show 'the existence of . . . jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Id.* at 1279 (alteration in original) (citation omitted). "If the Commissioner makes this showing, 'the burden shifts back to the claimant to prove'" they cannot perform the suggested jobs. *Id.*

***Administrative Proceedings***

On October 12, 2022, Plaintiff protectively filed a Title II application for a period of disability and Disability Insurance Benefits, alleging an initial onset date of August 13, 2019. (Tr. 29, 223). The Social Security Administration denied Plaintiff's claim initially on March 20, 2023, and upon reconsideration on February 19, 2024. (Tr. 29, 74, 82, 99, 110). Plaintiff requested a hearing (Tr. 117) and appeared by telephone before an Administrative Law Judge ("ALJ") on August 1, 2024. (Tr. 29, 51-73). At the hearing, Plaintiff, through her representative, amended her alleged onset date to May 9, 2023. (Tr. 29, 55). In a hearing decision dated August 14, 2024, the ALJ determined Plaintiff was not disabled. (Tr. 26-46). Plaintiff requested review on August 30, 2024. (Tr. 12, 208). The ALJ's decision became the final decision of the Commissioner upon the Appeals Council's denial of review on May 2, 2025. (Tr. 8-13). Plaintiff filed an appeal to this Court on July 3, 2025. (Doc. 1). This matter is ripe for consideration.

***Statement of Facts and Evidence***

The Court briefly summarizes the relevant facts and evidence from the administrative record below. Plaintiff was born on May 10, 1973, and was fifty (50) years old as of the amended alleged onset date. (Tr. 44). Plaintiff has at least a high school education and no past relevant work "within the last five years or five years prior to the date the disability must be established". (Tr. 44-45). Plaintiff's insured status runs through September 30, 2025, so she was required to establish disability on or before that date. (Tr. 29-30). The ALJ found that Plaintiff had not engaged in substantial gainful activity since May 9, 2023, the amended alleged onset date. (Tr. 31).

The ALJ determined that Plaintiff suffered from the severe impairments of lumbar spine degenerative disc disease, obesity, generalized anxiety disorder, and major depressive disorder. (Tr. 32). The ALJ found that Plaintiff's hypothyroidism, mixed hyperlipidemia,

cluster headaches, hypertension, and tremors were non-severe impairments. *Id.* The ALJ further found that Plaintiff's alleged knee problems, and malingering, were not medically determinable impairments. The ALJ explained that although the record reflected "mentions or suspicions" that Plaintiff "may have malingering and knee problems," neither diagnosis was confirmed by objective medical evidence. *Id.*

At Step Three, the ALJ considered Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root) and found that the evidence did not demonstrate the requisite level of limitation. (Tr. 32-33). Considering Plaintiff's obesity under Social Security Ruling 19-2p and noting a body mass index of 37.66, the ALJ found that obesity did not medically equal a listed impairment, whether alone or in combination with Plaintiff's other impairments. (Tr. 33). Considering the "paragraph B" criteria of Listings 12.04 and 12.06, the ALJ found that Plaintiff had a mild limitation in her ability to understand, remember, or apply information. The ALJ found moderate limitations in her abilities to interact with others, to concentrate, persist, or maintain pace, and to adapt or manage herself. (Tr. 33-38).

Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ found that the "paragraph B" criteria were not satisfied. (Tr. 38). The ALJ also found the "paragraph C" criteria were not satisfied because the evidence failed to establish their presence. *Id.* Thus, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 32-38).

At the hearing, Plaintiff testified that she has taken her prescription pain medication "for years," including while she was working, and that she "can't walk far and . . . can't stand up that long" because her "back gets to hurting so bad," with pain that "goes down [her]

legs," in "[b]oth legs." (Tr. 59, 61, 64). She estimated that she could stand "[m]aybe 30 minutes or less," and that after walking "about 15 minutes" she needed to rest "[a]bout ten minutes." (Tr. 61-62). She estimated that she could sit "[a]bout 20 minutes" before she had to "stretch [her] back" for "at least a good five, ten minutes." (Tr. 62-63). She testified that she lies down for pain relief "about an hour a day," "[a]round 2:00," and that "about a 10-pound is probably about as much as [she] can lift . . . [w]ithout hurting real bad." (Tr. 63). Asked how many good days she has in an average week, she answered, "[m]aybe one." (Tr. 63-64). As to her depression and anxiety, Plaintiff testified that she has "about five out of the seven" bad days, on which she cannot do her normal daily activities or household chores, and on which she "stay[s] away from everybody" and spends "[a]bout a half a day" lying in bed. (Tr. 65-66). The ALJ recounted this testimony in the decision. (Tr. 37, 40). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the ALJ also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 40).

Considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work, except that she could frequently climb, stoop, kneel, crouch, and crawl. She could perform simple tasks with simple decisions, with occasional interactions with supervisors and the public and occasional workplace changes. (Tr. 38). In assessing the RFC, the ALJ considered the prior administrative medical findings of the State agency consultants. (Tr. 43-44).

The ALJ explained that the limitation to frequent climbing, crouching, and crawling was due to knee pain from obesity. The limitation to frequent climbing and stooping accommodated Plaintiff's lumbar degenerative disc disease. (Tr. 44). The ALJ further

explained that the limitation to simple tasks with simple decisions was due to limitations in concentration, persistence, and pace from major depressive disorder. *Id.* The social limitations accommodated generalized anxiety disorder. *Id.* The limitation to occasional workplace changes was due to major depressive disorder and limited stress for anxiety. *Id.*

Because Plaintiff has no past relevant work, the ALJ proceeded to Step Five. (Tr. 45). Relying on the vocational expert's testimony, the ALJ found that Plaintiff could perform the requirements of representative light, unskilled occupations such as routing clerk (35,000 jobs nationally), marker (136,000 jobs nationally), and housekeeping cleaner (175,000 jobs nationally). (Tr. 45). The ALJ determined that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles ("DOT"). To the extent the testimony was not addressed in or was inconsistent with the DOT, the ALJ found that it was reasonably based on the vocational expert's knowledge, education, training, and experience. *Id.*

Ultimately, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from May 9, 2023, the amended alleged onset date, through August 14, 2024, the date of the ALJ's decision. (Tr. 46).

**DISCUSSION**

Plaintiff challenges the Commissioner's decision on three enumerated grounds. First, she contends that the ALJ failed to evaluate the supportability and consistency of the psychological opinions as 20 C.F.R. § 404.1520c requires, by lumping four separate opinions together and offering a single rationale addressed only to physical evidence. Second, she contends that the RFC is not supported by substantial evidence because the ALJ created an internal contradiction regarding postural limitations. Third, she contends that the RFC is not supported by substantial evidence because the ALJ failed to evaluate her hearing testimony under SSR 16-3p, including her testimony that she must lie down one hour daily,

has only one good day per week, and has five bad days per week on which she self-isolates. (Doc. 15, at 3). Having reviewed the record as a whole, the Court finds that Plaintiff's contentions lack merit.

## I. The ALJ Adequately Evaluated the Supportability and Consistency of the Psychological Opinions

Drs. Kyle and Woodruff, the State agency psychological consultants, reviewed the record at the initial and reconsideration levels and assessed Plaintiff's limitations in the four broad areas of mental functioning. (Tr. 43) (citing Tr. 75-81, 83-92). The ALJ found the prior administrative medical findings of the State agency consultants "fairly persuasive," explaining in a single paragraph that the consultants "provided specific reasons for their opinions indicating that these opinions were supported in the evidence of record at the time the opinions were rendered," but that the hearing-level evidence was "consistent with greater limitation as set forth in the residual functional capacity and decisional analysis." (Tr. 44). Plaintiff contends that this paragraph lumps four separate assessments together and offers a rationale drawn entirely from physical evidence, leaving the supportability and consistency of the psychological findings unaddressed. (Doc. 15, at 7-13); (Doc. 19, at 2-9). The ALJ's evaluation, read together with her preceding discussion of the psychological evidence, states the grounds for her finding of persuasiveness with sufficient clarity to permit meaningful review, and remand is not required.

### *A. Supportability and Consistency Standard*

The applicable regulations require an ALJ to explain how she considered the supportability and consistency of each medical source's medical opinions or prior administrative medical findings. 20 C.F.R. § 404.1520c(b)(2). The ALJ may address a source's opinions or findings together in a single analysis and need not articulate how she

considered each one individually. 20 C.F.R. § 404.1520c(b)(1). Supportability refers to the extent to which an opinion is supported by relevant objective medical evidence and the medical source's own explanations. 20 C.F.R. § 404.1520c(c)(1). Consistency concerns the extent to which an opinion is consistent with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "The more consistent a medical opinion(s)… is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)… will be." 20 C.F.R. § 404.1520c(c)(2).

Courts review the legal principles applied by an ALJ making a final decision on behalf of the Commissioner of Social Security de novo, but cannot decide the facts anew, make credibility determinations, or re-weigh the evidence. *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1060 (11th Cir. 2021). Courts review the ALJ's factual findings only to ensure that they are supported by substantial evidence. *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1103 (11th Cir. 2021). The substantial evidence threshold is not high and requires merely that the ALJ's decision is supported by more than a mere scintilla of evidence. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

Absent a statement of the reasons for a decision, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The ALJ must therefore "state with at least some measure of clarity the grounds for his [or her] decision." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation

omitted). But "there are no magic words to state with particularity the weight given to medical opinions or the reasons for discounting them." *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1276 n.14 (11th Cir. 2024). An ALJ need not recite the words "supportability" and "consistency." *Ball v. Soc. Sec. Admin., Comm'r*, No. 24-12496, 2025 WL 1010204, at *3 (11th Cir. Apr. 4, 2025). Reasoning that "suggests with enough clarity" that the ALJ considered both factors will suffice. *Dubose v. Comm'r of Soc. Sec.*, No. 24-13554, 2025 WL 2529598, at *5 (11th Cir. Sept. 3, 2025). The Court reads the decision as a whole, and the ALJ need not repeat, in evaluating an opinion, evidence she has already discussed elsewhere in the decision. *Raper*, 89 F.4th at 1275-76; *Adams v. Soc. Sec. Admin., Comm'r*, No. 23-11233, 2024 WL 2846726, at *3 (11th Cir. June 5, 2024). Nor does the regulation forbid an ALJ from addressing more than one source in a single paragraph. It "describe[s] a procedure for analyzing multiple opinions from one physician, not one conclusion from multiple physicians." *Davis v. Comm'r of Soc. Sec.*, No. 24-10771, 2025 WL 1123853, at *5 (11th Cir. Apr. 16, 2025) (citing 20 C.F.R. § 404.1520c(b)(1)). What the Court may not do is supply a rationale the ALJ did not give. The question is whether the ALJ's own decision reveals which portions of the findings she credited, and why, so that the Court can determine whether the resulting RFC rests on substantial evidence. *See Winschel*, 631 F.3d at 1179.

*B. The ALJ's Evaluation of the Psychological Opinions*

Plaintiff first objects that the ALJ addressed all four consultants in one paragraph. (Doc. 15, at 7-9). The organization of the decision is not itself error. *Davis*, 2025 WL 1123853, at *5 (no error where ALJ addressed two medical opinions in a single paragraph, because the ALJ "applied the proper standards and sufficiently explained the weight she afforded each medical opinion"). The question is whether the decision, read as a whole, articulates

how the ALJ considered the supportability and consistency of the psychological findings. The Court finds that it does.

The ALJ's supportability finding is that the consultants "provided specific reasons for their opinions." (Tr. 44). Standing alone, that sentence would say little. But it does not stand alone. In each of the four broad areas of mental functioning, the ALJ set out what the consultants found and cited the exhibits in which they explained those findings. (Tr. 34, 35, 36, 38) (citing Tr. 75-81, 83-92). She described Dr. Kyle's ratings of no limitation in three areas and mild limitation in concentrating, persisting, or maintaining pace, and Dr. Woodruff's ratings of mild limitation in understanding, remembering, or applying information and moderate limitation in the other three areas. (Tr. 43). Each consultant grounded their findings in Plaintiff's treatment records from her primary care provider, the consultative examination findings then available, and Plaintiff's reported activities. (Tr. 75-81, 83-92). Dr. Woodruff, who reviewed Dr. DuBose's February 2024 examination of Plaintiff, explained that she found the examination persuasive and assessed "at most moderate" psychological limitations considering the totality of the record. (Tr. 87). The ALJ's statement that the consultants "provided specific reasons" is thus an assessment of the sources' own explanations and the evidence on which they relied, which is what 20 C.F.R. § 404.1520c(c)(1) asks. The Court does not supply that rationale. It confirms that the reasons the ALJ described are the reasons in the exhibits she cited. This is not a case in which the ALJ offered no supportability rationale at all and the Commissioner asks the Court to build one from evidence the ALJ never invoked. Plaintiff does not contend that either consultant failed to explain her ratings or that the ALJ mischaracterized those explanations.

As to consistency, Plaintiff herself identifies the comparison the analysis would require here. She argues that the decision contains "zero discussion of the consistency of the

psychological opinions with the mental health treatment records and consultative psychological examinations.” (Doc. 15, at 9). She adds that the decision “simply recites findings from different sources without explaining how they relate to each other.” (Doc. 19, at 7). The Court therefore looks to whether the decision, read as a whole, compares the consultants’ findings with the two consultative examinations and the rest of the record, and explains how those sources relate to one another. It does.

The ALJ's consistency finding appears in the same passage of the decision, where she evaluated the consultants' findings alongside the opinions of the two psychologists who examined Plaintiff. The same sentence that addresses the consultants' reasons goes on to measure their findings against the rest of the record. She found that the findings "were supported in the evidence of record at the time the opinions were rendered," but that "the hearing level evidence . . . is consistent with greater limitation as set forth in the residual functional capacity and decisional analysis." (Tr. 44). She then turned to the examining psychologists. She found Dr. Ojelade’s opinion “somewhat persuasive as it is supported by objective examination,” but found that “the hearing level evidence is consistent with moderate mental limitations.” *Id.* She found Dr. DuBose’s opinion “persuasive as is supported by objective examination,” and explained that it “supports moderate mental limitations.” *Id.* Read together, these findings measure the consultants’ assessments against the other medical evidence of record. That is the inquiry 20 C.F.R. § 404.1520c(c)(2) describes.

That comparison also answers Plaintiff’s contention that the ALJ found two conflicting assessments equally persuasive without reconciling them. (Doc. 15, at 9-10); (Doc. 19, at 7). The ALJ did reconcile them. In every area where the two consultants differed, she adopted Dr. Woodruff’s more limiting rating and declined Dr. Kyle’s lower one, after

comparing both against the function reports, the consultative examinations, and Plaintiff's testimony. (Tr. 33-38). That is a determination of which finding accorded with the other medical and nonmedical evidence of record, which is the inquiry 20 C.F.R. § 404.1520c(c)(2) describes. It also explains what the ALJ meant in finding that the hearing-level evidence was "consistent with greater limitation." (Tr. 44). As applied to Plaintiff's mental impairments, the "greater limitation" the ALJ found was greater than Dr. Kyle assessed and equal to what Dr. Woodruff assessed. In each broad area, the ALJ noted the range between the two consultants' ratings and adopted its more limiting end. (Tr. 34-38).

Plaintiff argues that the ALJ could not look to her daily activities in assessing consistency because those activities are not medical evidence. (Doc. 19, at 8-9). The regulation provides otherwise. Consistency is measured against "the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Plaintiff's function reports and hearing testimony are evidence from nonmedical sources.

Plaintiff also reads the ALJ's list of hearing-level evidence as addressed only to her physical impairments. (Doc. 15, at 9); (Doc. 19, at 3-4). The list has four items. The first, the more recent lumbar imaging, and the fourth, Plaintiff's living independently with a spouse with significant needs, bear chiefly on her physical condition. The second and third, the absence of significant medication changes and the absence of specialty care, describe Plaintiff's course of mental health treatment as well. Elsewhere in the decision, the ALJ found that Plaintiff's anxiety and depression were treated with Buspar, Celexa, and Trazodone by her primary care provider, and that Plaintiff denied formal psychiatric treatment when relating her history to Dr. DuBose. (Tr. 41-42, 433). Those two items point toward less limitation rather than more, and they explain why the ALJ found Plaintiff no more limited than Dr. Woodruff did. The ALJ's reasons for finding Plaintiff more limited

than Dr. Kyle did appear in the paragraph B analysis, where she discussed the later function report, Dr. DuBose's examination, and Plaintiff's testimony, and adopted Dr. Woodruff's ratings. (Tr. 34-38). Plaintiff's contention that the ALJ's rationale addresses only physical evidence therefore reads two of the four stated reasons out of the decision.

Plaintiff's remaining contention is that the error was harmful because the RFC omits three limitations from Dr. Woodruff's mental residual functional capacity assessment, which is separate from the paragraph B ratings discussed above. Those limitations are that Plaintiff "should limit contact with the public to non-problem solving interactions," "would fare well with a supportive supervisor," and "would have adequate adaptation if changes introduced gradually." (Tr. 91); (Doc. 15, at 10-13). Social Security Ruling 96-8p requires the ALJ to explain and address any conflict between the RFC and a medical opinion. *Weidlich v. Comm'r of Soc. Sec.*, No. 22-13309, 2023 WL 8015753, at *2 (11th Cir. Nov. 20, 2023). The ALJ must also explain the omission when she credits a source's moderate limitation and then imposes no corresponding restriction. *Wheeler v. Comm'r of Soc. Sec.*, No. 22-14251, 2024 WL 4603298, at *5 (11th Cir. Oct. 29, 2024). But she need not adopt a source's phrasing, or discuss each statement separately, when the RFC accounts for the limitation the statement describes. *Theil v. Comm'r Soc. Sec. Admin.*, No. 24-11615, 2025 WL 707863, at *3 (11th Cir. Mar. 3, 2025) (ALJ not required to address opinion that "feedback should be supportive" where RFC reflected moderate social limitation). *See also Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 968-69 (11th Cir. 2015).

Read against Dr. Woodruff's own ratings, the RFC accounts for each of the three limitations Plaintiff says the ALJ omitted. Dr. Woodruff's narrative statements summarize ratings she made elsewhere in the same assessment, and those ratings define the limitations she found. As to supervision, she rated Plaintiff moderately limited in the "ability to accept

instructions and respond appropriately to criticism from supervisors," but not significantly limited in the "ability to sustain an ordinary routine without special supervision" or in the "ability to ask simple questions or request assistance." (Tr. 90). Her statement that Plaintiff "would fare well with a supportive supervisor" thus describes the setting in which Plaintiff would do best, not a need for special supervision that Dr. Woodruff herself found absent. (Tr. 91). As to the public, she rated Plaintiff moderately limited in the "ability to interact appropriately with the general public." (Tr. 90). As to change, she rated Plaintiff moderately limited in the "ability to respond appropriately to changes in the work setting." (Tr. 91).

The RFC restricts each of those areas. It provides that Plaintiff "can perform simple tasks, with simple decisions, occasional interactions with supervisors and the public, and occasional workplace changes." (Tr. 38). The ALJ explained that the "[s]ocial limitations accommodate her generalized anxiety disorder" and that the "[l]imitation to occasional workplace changes is due to her major depressive disorder and limits stress for anxiety." (Tr. 44). She also found persuasive Dr. DuBose's opinion that Plaintiff "can adjust to simple changes in routine and might have some trouble interacting with the public," and she explained that this opinion "supports moderate mental limitations." *Id.* A worker limited to simple tasks, simple decisions, occasional public contact, and occasional workplace change does not face the problem-solving interactions or abrupt reorganizations Plaintiff describes.

This case is therefore unlike *Wheeler*, where the ALJ credited a psychologist's moderate limitations in interacting with supervisors and coworkers but restricted only the claimant's contact with the public. 2024 WL 4603298, at *5. Here, every social and adaptation limitation Dr. Woodruff found has a corresponding restriction in the RFC. The ALJ's hypothetical to the vocational expert carried those restrictions forward, asking the expert to assume an individual who "can perform simple tasks with simple decisions and

occasional interactions with supervisors and the public, and occasional workplace changes," and then reducing the exertional level to light. (Tr. 69-70). The expert's testimony in response is therefore substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Plaintiff's counsel, moreover, questioned the expert only about absenteeism and time off tasks, but failed to ask whether a restriction to non-problem-solving public contact, supportive supervision, or gradually introduced change would affect the jobs the expert identified. (Tr. 72). The Court can discern the connection between the consultants' assessments and the ALJ's determination, and remand is not required on this issue.

## II. Substantial Evidence Supports the ALJ's Postural Findings

Plaintiff next contends that the RFC is not supported by substantial evidence because the ALJ created an internal contradiction regarding her postural limitations. (Doc. 15, at 13-20). At the initial level, State agency physician Dr. Neway opined that Plaintiff could perform light work and could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. (Tr. 79). At reconsideration, State agency physician Dr. Stanley opined that she could perform medium work and could frequently perform those same activities. (Tr. 88). The ALJ found both assessments "fairly persuasive" but further found that the hearing-level evidence was "consistent with greater limitation as set forth in the residual functional capacity and decisional analysis." (Tr. 44). The ALJ then limited Plaintiff to light work with frequent climbing, stooping, kneeling, crouching, and crawling. (Tr. 38). Plaintiff argues that the ALJ adopted the more restrictive exertional finding from one physician and the less restrictive postural finding from the other without explanation, and that the postural finding contradicts the ALJ's own statement that greater limitation was warranted. (Doc. 15, at 14-

17). In reply, Plaintiff clarifies that she does not contend the ALJ was required to adopt either opinion verbatim. (Doc. 19, at 9).

*A. The Standard*

The ALJ, not a medical source, assesses the RFC based on all the relevant evidence and does not defer to any prior administrative medical finding. 20 C.F.R. §§ 404.1520c(a), 404.1545(a)(3), 404.1546(c). When those findings conflict, resolving the conflict is the ALJ's task, and an ALJ who credits one finding over another does not substitute her judgment for that of a medical source. *See Rivera v. Acting Comm'r of Soc. Sec. Admin.*, No. 24-13090, 2025 WL 2814430, at *3 (11th Cir. Oct. 3, 2025). Even so, Social Security Ruling 96-8p requires the ALJ to explain and address any conflict between the RFC and a medical opinion. *Weidlich*, 2023 WL 8015753, at *2. The ALJ must state her grounds with at least some measure of clarity, *Winschel*, 631 F.3d at 1179, but the Court reads the decision as a whole, *Raper*, 89 F.4th at 1275-76.

*B. The ALJ's Postural Findings*

Plaintiff's argument depends on a premise that the decision does not support. The ALJ found that the hearing-level evidence was "consistent with greater limitation as set forth in the residual functional capacity and decisional analysis." (Tr. 44). From that sentence, Plaintiff reasons that "logic and consistency demand that the RFC reflect more restrictive limitations than those previously opined." (Doc. 15, at 15). In her view, "the logical and legally required approach would be to adopt Dr. Neway's more restrictive opinion in its entirety, or to impose even greater restrictions." *Id.* Because the RFC permits frequent rather than occasional postural activities, she calls the ALJ's statement "demonstrably false." (Doc. 15, at 17); (Doc. 19, at 10). Plaintiff thus reads the sentence as a promise to adopt the more restrictive of the two State agency findings on every function. Nothing in the ALJ's statement

supports that reading. By its terms, it says the additional limitation is the limitation "set forth in the residual functional capacity and decisional analysis," and the RFC is in fact more restrictive than the most recent State agency finding. The ALJ limited Plaintiff to light work rather than the medium work Dr. Stanley found, kept the postural activities at frequent, and added mental limitations that neither physical consultant assessed. (Tr. 38, 43, 88). The RFC is an administrative finding reserved to the ALJ, not a composite of the most restrictive parts of each medical opinion. 20 C.F.R. § 404.1546(c). Plaintiff cites no authority holding that an ALJ who increases a claimant's exertional limitations must increase her postural limitations too.

Nor does any medical source support Plaintiff's premise that less exertional capacity means less postural capacity. The regulations treat postural functions such as stooping, climbing, crawling, and crouching as nonexertional functions, separate from the strength demands of lifting, carrying, standing, and walking. 20 C.F.R. § 404.1569a(b), (c)(1)(vi). Plaintiff argues that Dr. Neway's exertional and postural findings rise and fall together because both "flow from" the lumbar spine. (Doc. 15, at 16). Dr. Neway did not say that. The only explanation Dr. Neway gave for the occasional postural rating was "Mild LS deg changes." (Tr. 79). Dr. Stanley gave the same explanation, word for word, for frequent postural activities. (Tr. 89). Thus, the two consultants read the same lumbar findings and reached different postural ratings, and neither tied the postural rating to the exertional one. That link comes only from Plaintiff's own reasoning, and it does not show that the ALJ's postural findings lack substantial evidence.

The ALJ explained that the limit to frequent climbing, crouching, and crawling accounts for knee pain from obesity, and that the limit to frequent climbing and stooping accounts for lumbar degenerative disc disease. (Tr. 44). She did not expressly explain why

she chose frequent rather than occasional, but the decision does not leave the Court to guess at her reasoning. The ALJ found Dr. Stanley's findings fairly persuasive because her stated reasons and the record evidence at the time supported them (Tr. 44), and the RFC adopts her postural ratings. The ALJ then identified the more recent lumbar imaging as evidence of greater limitation than Dr. Stanley found (Tr. 44), and the RFC imposes a greater limitation than Dr. Stanley did at the exertional level. The evidence the ALJ discussed supports the frequent postural rating. Treating examinations throughout the period from January 2022 through July 2024 showed a normal gait and full strength, although they also showed abnormal range of motion and joint tenderness. (Tr. 41). The consultative examination in February 2023 showed full range of motion and strength, negative straight leg raise testing, a normal gait, and the ability to stand on heels and toes and tandem walk. (Tr. 42, 379-83). In February 2024, well within the relevant period, Plaintiff described a typical day of cooking, cleaning the kitchen, washing dishes, and taking the dog out. (Tr. 42, 433). Some of this evidence predates the May 9, 2023, amended onset date, but the ALJ could consider it, and the treatment notes from within the relevant period show the same normal gait and full strength. (Tr. 41, 482, 488, 640).

This is not a case in which the ALJ credited a single medical opinion and then silently departed from it. *Compare Weidlich*, 2023 WL 8015753, at *2-3. Plaintiff points to records of tenderness, limited motion, and pain (Doc. 15, at 18-19), but the question is not whether the record could support a more restrictive finding. It is whether substantial evidence supports the finding the ALJ made, and it does. *See Winschel*, 631 F.3d at 1178.

*C. Any Error Was Harmless*

Even if the ALJ should have explained the postural finding more fully, any error was harmless. The Eleventh Circuit applies the harmless error doctrine in Social Security appeals

and will not remand for an error that did not affect the ALJ's ultimate determination. *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). A claimant who shows no prejudice from an asserted error is not entitled to remand. *Flowers v. Comm'r, Soc. Sec.*, 97 F.4th 1300, 1307-08 (11th Cir. 2024). The burden of showing that an error was harmful normally falls on the party attacking the agency's determination. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Plaintiff asserts only that the identified jobs "may have been eliminated" by a limitation to occasional postural activities. (Doc. 19, at 11). As noted above, Plaintiff's counsel questioned the vocational expert only about absenteeism and time off tasks but did not ask whether a limitation to occasional postural activities would affect the identified jobs. (Tr. 72).

The Court does not make its own step five finding. It asks only whether Plaintiff has shown that a limitation to occasional postural activities could have changed the outcome. The Court finds Plaintiff has not. An error in a hypothetical is harmless when it does not affect the jobs on which the ALJ relied. *See Battle v. Astrue*, 243 F. App'x 514, 522 (11th Cir. 2007). At step five, the ALJ found that Plaintiff could work as a routing clerk, a marker, and a housekeeping cleaner. (Tr. 45). The DOT descriptions of those jobs require no more than occasional climbing, stooping, kneeling, crouching, or crawling. DOT 222.587-038, 1991 WL 672123 (4th ed. 1991) (routing clerk); DOT 209.587-034, 1991 WL 671802 (4th ed. 1991) (marker); DOT 323.687-014, 1991 WL 672783 (4th ed. 1991) (housekeeping cleaner). The routing clerk and marker jobs require none of those activities, and the housekeeping cleaner job requires only occasional stooping, kneeling, and crouching. DOT 222.587-038, 1991 WL 672123; DOT 209.587-034, 1991 WL 671802; DOT 323.687-014, 1991 WL 672783. None of the three requires climbing. *Id.* A limitation to occasional postural activities therefore would not have eliminated any job on which the ALJ relied at step five. (Tr. 45). Because substantial

evidence supports the ALJ's postural findings and any shortfall in the ALJ's explanation was harmless, and remand is not required on this issue.

**III. The ALJ Properly Evaluated Plaintiff's Subjective Testimony**

Plaintiff last contends that the ALJ recited her hearing testimony but never evaluated it under SSR 16-3p. She points particularly to her testimony that she lies down an hour each afternoon, has one good day per week, and has five bad days per week on which she self-isolates. (Doc. 15, at 20-25). She argues that, if credited, this testimony would preclude work. In her words, "[i]f she has five bad days per week where she stays in bed half the day, this translates to excessive absenteeism that is incompatible with sustained work activity." (Doc. 15, at 21). The vocational expert testified that "one day absent per month would be tolerated" and that "up to ten percent of the time off task would be tolerated." (Tr. 72).

An ALJ who discredits subjective testimony must articulate explicit and adequate reasons for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The reasons need not follow any particular formula, and a clearly articulated finding with substantial supporting evidence in the record will not be disturbed. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the decision is not a broad rejection that leaves the reviewing court unable to conclude that the ALJ considered the claimant's condition as a whole. *Dyer*, 395 F.3d at 1211. The Eleventh Circuit has upheld the same "not entirely consistent" finding the ALJ made here where the ALJ recounted the claimant's testimony and then explained, through her discussion of the record, why the alleged limitations were not fully credited. *Raper*, 89 F.4th at 1277-79.

The ALJ did that here. She recounted Plaintiff's testimony in detail, including that Plaintiff "lays down for one hour per day in the afternoon," "has one good day per week,"

and “has five bad days per week where she is not able to do her normal activities and self isolates, remaining in bed half of the day.” (Tr. 40). She then found the testimony not entirely consistent with the record because “treatment notes, examinations, and the claimant’s own statements do not fully support her allegations.” *Id.* She identified those reasons in the discussion that followed.

As to the physical evidence, the ALJ found that throughout the treatment records Plaintiff “had a normal gait” and “[m]uscle strength was five out of five throughout.” (Tr. 41). She acknowledged that the same records showed “an abnormal range of motion and joint tenderness.” *Id.* At the consultative examination, “[p]hysical examination was essentially unremarkable with a full range of motion and strength throughout,” “[s]traight leg raise testing was negative bilaterally,” and Plaintiff “ambulated without an assistive device.” (Tr. 42). The March 2023 lumbar x-ray showed “mild multilevel lumbar spine degenerative changes,” and the July 2024 x-ray showed “multilevel lumbar spondylosis with disc space height loss most pronounced at L5-S1.” (Tr. 41-42). As to treatment, the ALJ noted that Plaintiff’s conditions were managed with medication by her primary care provider, with “no significant medication changes” and “no specialty care.” (Tr. 41, 44).

As to Plaintiff's own statements, the ALJ noted that in both function reports she reported that she was not limited in sitting. (Tr. 39, 40). In February 2024, well within the relevant period, she told Dr. DuBose that "[o]n a typical day, she took her medications, cooked breakfast, and sat. She cleaned the kitchen, spoke with her husband, watched television, and put out supper. She cooked, cleaned dishes, and took the dog out." (Tr. 42). At the hearing, she testified that when grocery shopping she will "push myself to at least an hour, hour-and-a-half," and that she is "in the store usually from two to three hours." (Tr. 61).

Those reasons reach the specific testimony Plaintiff identifies. Plaintiff's testimony that she lies down "about an hour a day" and has "[m]aybe one" good day a week concerned her back pain. (Tr. 63-64). The treating and consultative examinations, which showed a normal gait, full strength, and negative straight leg raise testing, and the imaging, which showed degenerative changes without acute findings, do not support limitations of that severity. (Tr. 41-42).

Plaintiff's testimony that she has "about five out of the seven" bad days, on which she spends "[a]bout a half a day" in bed, concerned her depression and anxiety. (Tr. 65-66). The ALJ addressed that testimony in rating Plaintiff's abilities to interact with others and to adapt or manage herself, and she set it against the record. (Tr. 35, 37-38). Dr. Ojelade found that Plaintiff's "clinical presentation and reported symptoms suggested that her psychological diagnoses did not impact her functional abilities," and that "[s]he had difficulties with the activities of daily living associated with her physical health only." (Tr. 41). Dr. DuBose found that Plaintiff's "attention and concentration were adequate for normal conversation" and that "[h]er thought process was linear, relevant, and non-bizarre." (Tr. 42-43). He also reported that "results of the examination were believed to possibly be an underestimate of her current functioning." (Tr. 43). Plaintiff "denied formal psychiatric treatment but took psychotropic medications." (Tr. 42). The ALJ accounted for the limitations she did credit in the RFC's social and workplace-change restrictions. (Tr. 44). The decision leaves no doubt which portions of Plaintiff's testimony the ALJ credited and why she did not credit the rest. *See Raper*, 89 F.4th at 1277-79.

Because the ALJ articulated her reasons, the rule that unexplained rejection of testimony requires accepting it as true does not apply. See *Foote*, 67 F.3d at 1562. The ALJ's reasons are the factors 20 C.F.R. § 404.1529(c)(3) directs, and substantial evidence supports

them. Plaintiff's argument that the record could support a more restrictive finding asks the Court to reweigh the evidence, which it may not do. *Dyer*, 395 F.3d at 1212. Thus, remand is also not required on this issue.

Consequently, the Court finds that the ALJ's decision is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the determination of the Social Security Commissioner is affirmed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED**, this __ day of September, 2026.

s/ **ALFREDA L. SHEPPARD**
UNITED STATES MAGISTRATE JUDGE